# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 24-374V**
UNPUBLISHED

KAREN SALBERG,

Petitioner,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent.

Chief Special Master Corcoran

Filed: July 23, 2026

*Maximillian J. Muller, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Mitchell Jones, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT[1]

On March 8, 2024, Karen Salberg filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, caused by an influenza ("flu") vaccine administered on October 31, 223. Petition at 1.

For the reasons set forth below, I find Petitioner has established that she meets the requirements for compensation.

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I. Procedural History

On January 30, 2025, Respondent filed a status report representing a willingness to pursue informal resolution of the above-captioned claim. ECF No. 12. That same day, a status conference was held, and I issued a docket entry Scheduling Order providing the parties with a filing schedule for a motion for ruling on the record and response to use if they were unable to settle this case by the end of May 2025. On June 2, 2025, Petitioner filed her Motion, along with a notification that the parties had been unable to resolve damages informally. Motion for a Ruling on the Record ("Mot."), ECF No. 14 at 1-2. Respondent submitted a response on June 27, 2025. Response to Petitioner's Motion for Ruling on the Record ("Resp."), ECF No. 15.

## II. Factual Background

### A. Medical Records

Petitioner received a flu vaccine in her left shoulder on October 31, 2022. Ex. 1 at 1. Prior to her vaccination, she had no history of shoulder pain. Ex. 3 at 27-38. On November 3, 2022, Petitioner sought an orthopedic recommendation to address right knee pain, but did not mention shoulder concerns. Ex. 8 at 6.

On November 8, 2022, Petitioner contacted her primary care provider, P.A. Megan Thomas, with complaints of shoulder pain. Ex. 8 at 6. She wrote in a message that "flu shot arm is still bothering me. It's been over a week…. I've never had a problem with flu shots before. Any idea how long this might last….?" *Id.* P.A. Thomas responded that it could take two weeks for her arm to heal. *Id.* at 7.

Petitioner saw orthopedist Jesse Chastil, M.D., on December 6, 2022, for treatment of right knee pain. Ex. 6 at 7-10. There is no mention of shoulder pain at this meeting.

On January 20, 2023, Petitioner saw P.A. Thomas for a follow-up visit related to her knee and other medical issues. Ex. 3 at 20, 23-25. She also reported that she "[c]ontinue[d] to have some pain in her arm and shoulder in the left arm since having the flu shot in October." *Id.* at 24. Her arm was tender, but she exhibited full range of motion and was referred to physical therapy. *Id.*

Petitioner began physical therapy on February 23, 2023. Ex. 4 at 16. She reported "a sudden onset of left shoulder pain after receiving a flu shot on10/31/2022 that gradually … worse[ned]." *Id.* She was assessed with pain, tendonitis "with impingement syndrome

resulting in adhesive capsulitis." *Id.* Petitioner attended 12 physical therapy sessions between February 20 and April 10, 2023. Ex. 4 at 12, 16. Petitioner attended six additional physical therapy sessions between June 13 and 20, 2023. Ex. 4 at 7, 10, 32-33.

On May 22, 2023, Petitioner returned to P.A. Thomas for a follow-up visit regarding her left shoulder. Ex. 3 at 14, 12-13. She reiterated the view that her symptoms began in October 2023, and that she continued to have intermittent pain with range of motion issues. *Id.* at 9. Petitioner had an MRI on June 12, 2023, that showed a low-grade tear of the superior rotator cuff tendons, which was suggestive of adhesive capsulitis. Ex. 3 at 45-46.

On July 28, 2023, Petitioner saw orthopedic surgeon Todd Michael Wente for an evaluation of her left shoulder. Ex. 6 at 13. She reported that her "[s]ymptoms began on 10/31/2022 without traumatic event. The patient reports she received the flu shot that same day and the pain started shortly after." *Id.*

### B. Affidavit Evidence

Petitioner submitted two declarations in support of her claim. Ex. 9. In the first (signed on March 6, 2024), she explained that she felt pain when the vaccine was administered, which grew progressively worse. *Id.* at 1. She also described how her injury affected her daily life. *Id.* at 2-3. Her second statement (signed on May 16, 2025) reiterates the contention that her shoulder pain began after her flu vaccine. Ex. 10 at 1-2.

## III. Fact Findings and Ruling on Entitlement

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

In particular, a petitioner must establish that she suffered an injury meeting the Table criteria (*i.e.* a Table injury), in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. If a petitioner establishes a Table injury the burden shifts to respondent to establish a more likely alternative cause. Section 13(a)(1)(A), 11(c)(1)(C)(i), 14(a). If a petitioner cannot establish a Table injury, or she may pursue causation-in-fact under the legal standard set forth in *Althen v. Sec'y of Health & Hum. Servs.*, 418 F. 3d 1274, 1278 (Fed. Cir. 2005).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an HPV vaccine. 42 C.F.R. § 100.3(a)(XVI)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g., NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

In addition to causation, a petitioner must also meet the requirements establishing that the vaccine received is "covered" by the Program, the duration and severity of petitioner's injury, and the lack of other award or settlement.[3] With regard to severity, a petitioner must show that she suffered the residual effects or complications of her injury or condition for more than six months after the administration of the vaccine. § 11(c)(1)(D)(i); *see Song v. Sec'y of Health & Hum. Servs.,* 31 Fed. Cl. 61, 65-66 (1994), aff'd, 41 F.3d 1520 (Fed. Cir. 2014) (noting that a petitioner must demonstrate the six-month severity requirement by a preponderance of the evidence). Finding that petitioner has met the severity requirement cannot be based on petitioner's word alone, though a special master need not base their finding solely on medical records. Section 13(a)(1); *see Colon v. Sec'y of Health & Hum. Servs.*, 156 Fed. Cl. 534, 541 (2021). Severity must be established regardless of whether the claim arises under the Table or

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

is a causation-in-fact claim.

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain her Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner can meet this criterion. I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her left shoulder that would explain her symptoms.

#### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The medical records preponderantly establish onset of injury occurring close-in-time to vaccination. Petitioner first reported shoulder pain on November 8, 2022. Ex. 8 at 6. Thereafter, she consistently linked her shoulder pain to the flu vaccine. *See, e.g.,* Ex. 3 at 24 (record from January 20, 2023 stating that Petitioner continued to have arm pain "since having the flu shot in October); Ex. 4 at 16 (record from February 23, 2023 describing "a sudden onset of left shoulder pain after receiving a flu shot on10/31/2022").

Respondent argues that Petitioner first reported any shoulder pain on November 8th, but did not state a precise onset time or date. Resp. at 9-10. Further, Petitioner delayed in seeking treatment until January 2023, despite treating for right knee pain in December 2022. *Id.* at 11. However, given that Petitioner was told it may take time for her shoulder pain to subside, and that the December meeting with an orthopedist was for unrelated knee pain, it was reasonable that shoulder concerns were not discussed. Further, when the record is viewed in its entirety, there is ample evidence to find proper onset began near in time to the vaccination. Additionally, Program petitioners are not required to marshal records setting forth with chronographic specificity the precise day and hour that their onset manifested. As noted above, Petitioner reported pain fairly quickly after her vaccination, and repeatedly linked her shoulder pain to the October 31, 2022, vaccination.

Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

### 3. Petitioner's Pain was Limited to her Vaccinated Shoulder

The record also establishes that Petitioner's pain was limited to her left shoulder. The reported symptoms, diagnostic evidence, and treatment were all limited to her left shoulder. *See, e.g.*, Ex. 4 at 16 (physical therapy record describing left shoulder pain, restrictions, and therapy following the flu vaccination)

Respondent argues that Petitioner experienced symptoms outside her shoulder, including tightness and popping in her neck along with left hand weakness. Report at 12-13. But these record references do not defeat a showing that Petitioner not only *also* experienced shoulder-specific pain, but that most of her complaints and treatment efforts were aimed at addressing it. Accordingly, preponderant evidence supports this Table element as well.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim.

## B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

That record shows that Petitioner received a flu vaccine intramuscularly on October 31, 2022, in the United States. Ex. 1 at 1, *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 9 at 3; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she meets the severity requirements of the Vaccine Act, and that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## Conclusion

**For all of the reasons discussed above, and based on consideration of the record as a whole, I find Petitioner is entitled to compensation.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master